**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **TOMMY POLANIEC**, individually and on behalf of all others similarly situated, | ) | **Case No.:** |
| **Plaintiff,** | ) | |
| **v.** | ) | **CLASS ACTION COMPLAINT** |
| **McKESSON CORPORATION**, | ) | |
| **Defendant.** | ) | **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Tommy Polaniec ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant McKesson Corporation ("McKesson" or "Defendant"). Plaintiff alleges the facts concerning his own conduct and experiences on personal knowledge. He alleges all other facts upon information and belief after a reasonable investigation by counsel, including review of Defendant's public statements, corporate and privacy materials, regulatory filings, and reports concerning the cybersecurity incident at issue. Many additional facts concerning the affected applications, data tables, security controls, and persons whose information was exfiltrated are exclusively within Defendant's possession and control.

## NATURE OF THE ACTION

1. This is a healthcare data-breach class action arising from Defendant's failure to reasonably safeguard personally identifiable information ("PII") and protected health information ("PHI") that Defendant collected, created, received, processed, maintained, transmitted, and stored through its prescription-technology, medication-access, and pharmacy-management operations.

PII and PHI are referred to collectively as "Private Information."

2. On August 25, 2026, McKesson discovered a cybersecurity incident affecting its information systems. McKesson disclosed the incident in a Form 8-K filed on August 28, 2026, and stated that its investigation was in its early stages.[1]

3. McKesson subsequently stated in a public cybersecurity notice that the incident involved unauthorized access to third-party applications and the exfiltration of data (the "Data Breach"). McKesson has not yet publicly identified all affected applications, the complete categories of data taken, or the final number of affected people.[2]

4. According to contemporaneous cybersecurity reporting, the ShinyHunters extortion group claimed responsibility and claimed that it exfiltrated approximately one terabyte of data over four days and obtained approximately 284 million raw patient-related records or database lines. The reported figure is not a verified count of unique patients; the threat actor stated that it had not determined the number of unique people, and McKesson has not confirmed the threat actor's claims.

5. ShinyHunters reportedly claims that the exfiltrated corpus includes combinations of names, addresses, dates of birth, Social Security numbers, patient identifiers, telephone numbers, email addresses, Medicaid numbers, medical-record numbers, medications, allergies, illnesses, disabilities, appointments, physicians, prescriptions, medication shipments, invoices, and information concerning healthcare providers and clinics. McKesson has not confirmed those specific fields.[3]

---

[1] McKesson Corp., Current Report (Form 8-K), Item 7.01 (Aug. 28, 2026), https://www.sec.gov/Archives/edgar/data/927653/000092765326000247/mck-20260825.htm.

[2] McKesson Corp., *McKesson's Cybersecurity Commitment*, https://www.mckesson.com/utility/cybersecurity/ (last visited Aug. 29, 2026).

[3] Lawrence Abrams, *McKesson Discloses Breach After ShinyHunters Claims Patient Data Theft*, BleepingComputer (Aug. 28, 2026), https://www.bleepingcomputer.com/news/security/mckesson-discloses-breach-after-shinyhunters-claims-patient-data-theft/ (reporting the threat actor's claims concerning access method, approximately one terabyte of exfiltration, approximately 284 million raw patient-related records, asserted data fields, and the absence of independent verification).

6. Defendant failed to take precautions designed to keep individuals' Private Information secure.

7. As a result of Defendant's inadequate digital security and notice process, Plaintiff and Class Members' Private Information was exposed to criminals. Plaintiff and the Class Members have suffered and will continue to suffer injuries including: financial losses caused by misuse of their Private Information; the loss or diminished value of their Private Information as a result of the Data Breach; lost time associated with detecting and preventing identity theft; and theft of personal and financial information.

8. Plaintiff brings this action on behalf of all persons whose Private Information was compromised as a result of Defendant's failure to: (i) adequately protect the Private Information of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; (iii) effectively secure hardware containing protected Private Information using reasonable and adequate security procedures free of vulnerabilities and incidents; and (iv) timely notify Plaintiff and Class Members of the Data Breach. Defendant's conduct amounts to gross negligence and recklessness, and violates federal and state statutes.

9. Plaintiff seeks to remedy these harms and prevent any future data compromise on behalf of himself, and all similarly situated persons whose personal data was compromised and stolen as a result of the Data Breach and who remain at risk due to Defendant's inadequate data security practices.

## PARTIES

10. Plaintiff is a natural person, citizen of the State of Texas, and resident of Tomball, Texas.

11. Upon information and belief, Defendant obtained and stored Plaintiff's Private Information in its ordinary course of business operations.

12. Had Plaintiff known that Defendant did not utilize reasonable data security measures, he would have allowed Defendant to obtain his Private Information.

13. Plaintiff is very careful about sharing his sensitive Private Information. Plaintiff has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source.

14. As a result of the Data Breach, Private made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing credit reports, and financial account statements for any indications of actual or attempted identity theft or fraud.

15. Plaintiff has spent multiple hours and will continue to spend valuable time for the remainder of his life, that he otherwise would have spent on other activities, including but not limited to work and/or recreation.

16. Plaintiff suffered actual injury from having his Private Information stolen as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of his Private Information, a form of property that Defendant maintained belonging to Plaintiff; (b) violation of his privacy rights; (c) the theft of his Private Information by a ransomware group; and (d) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

17. As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harm caused by the Data Breach. In addition, Plaintiff will continue to be at present, imminent, and continued increased risk of identity theft and fraud for the remainder of his life because his Private Information was *stolen* by a ransomware group known for misusing information stolen in data breaches.

18. Defendant McKesson Corporation is a Delaware corporation with its principal place of business and principal executive offices at 6555 State Highway 161, Irving, Texas 75039.

McKesson is therefore at home in Texas and within this District.

## JURISDICTION AND VENUE

19. This Court has subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the proposed Class contains more than 100 members; at least one Class member is a citizen of a state different from at least one Defendant; and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

20. This Court has general personal jurisdiction over McKesson because McKesson maintains its principal place of business in Irving, Texas.

21. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in or were directed from this District, including McKesson's corporate cybersecurity governance, risk-management program, third-party application oversight, data-protection decisions, executive supervision, and response to the Data Breach. Assignment to the Dallas Division is proper because McKesson's principal executive offices are located in Irving, Dallas County, Texas.

## CHOICE OF LAW

22. Texas has the most significant relationship to the common security conduct alleged because McKesson is headquartered in this District and, upon information and belief, the challenged enterprise governance, access-control, data-protection, and incident-response decisions occurred or were directed from Texas. Plaintiff therefore pleads Texas law where applicable and, in the alternative, other applicable state law under Federal Rule of Civil Procedure 8(d), subject to discovery and the Court's choice-of-law determination.

## FACTUAL ALLEGATIONS

### A. Background on Defendant

23. Defendant is a major American healthcare services company that distributes pharmaceuticals and provides medical supplies and health information technology.

24. In the regular course of its business, Defendant acquires, collects, stores and maintains possession, custody, and control of a wide variety of personal and confidential information belonging to Plaintiff and Class Members.

25. By obtaining, collecting, using, and deriving a benefit from Plaintiff and Class Members' Private Information, Defendant assumed legal and equitable duties to those individuals and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from disclosure.

26. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information. Plaintiff and Class Members, as current and former patients of Defendant, relied on Defendant to keep their Private Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

27. Defendant stored Plaintiff's and Class Members' Private Information, at a minimum, in an unprotected, unguarded, unsecured, and/or otherwise unreasonable location. Plaintiff's and Class Members' Private Information was not encrypted.

28. Defendant stored the Plaintiff's and Class Members' Private Information in a location that had inadequate security to prevent unauthorized access.

### B. The August 2026 Data Breach

29. McKesson discovered the Data Breach on August 25, 2026 and disclosed it publicly on August 28, 2026.

30. McKesson confirmed that unauthorized actors accessed third-party applications and exfiltrated data. McKesson stated that it activated incident-response procedures and engaged outside cybersecurity specialists, but it has not yet disclosed the complete affected population or all data elements taken.

31. According to contemporaneous reporting, ShinyHunters claims that it obtained access through social engineering and identity-system compromise, accessed McKesson-connected Salesforce and Snowflake environments, and exfiltrated approximately one terabyte of data over four days between August 21 and August 25, 2026.

32. The group reportedly claims that the Snowflake data included approximately 284 million raw patient-related records. The group clarified that the figure represents records or rows rather than unique individuals and stated that it had not completed a unique-person count.

33. The group reportedly claims that the stolen data included patient identity, contact, government or benefit identifiers, medical-record identifiers, medications, allergies, illnesses, disabilities, providers, appointments, prescriptions, medication shipments, and invoices. McKesson has not yet publicly confirmed those specific fields.

34. Defendant's wrongful actions and/or inactions—to wit, failing to protect Plaintiff's and Class Members' Private Information with which it was entrusted—directly and/or proximately caused the theft and dissemination into the public domain of Plaintiff's and Class Members' Private Information without their knowledge, authorization, and/or consent. As a further direct and/or proximate result of Defendant's wrongful actions and/or inactions, Plaintiff and Class Members have suffered, and will continue to suffer, damages including, without limitation: (i) the untimely and/or inadequate notification of the Data Breach; (ii) improper disclosure, dissemination and publication of their Private Information; (iii) criminal misuse of their Private Information; (iv) identity theft; (v) financial fraud; (vi) loss of privacy; (vii) out-of-pocket expenses incurred to mitigate the identity theft and financial fraud and the continued increased risk of identity theft

and/or identity fraud pressed upon them by the Data Breach; (viii) economic losses relating to the theft of their Private Information; (ix) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (x) deprivation of the value of their Private Information, for which there is a well-established national and international market; and (xi) stress, anxiety and emotional distress.

35. As a result of Defendant's failure to properly safeguard and protect Plaintiff's and Class Members' Private Information, Plaintiff's and Class Members' privacy has been invaded and their rights violated. Their compromised Private Information was private and sensitive in nature and was left inadequately protected by Defendant. Defendant's wrongful actions and/or inactions and the resulting Data Breach have placed Plaintiff and Class Members at a continuing increased risk of identity theft and identity fraud.

**C. Defendant's Security Obligations and Failures**

36. Defendant knew that its systems contained unusually sensitive and persistent information. McKesson has publicly acknowledged that it and its vendors electronically transmit, process, store, and host PHI and other personal information; that healthcare companies are increasingly targeted; and that cybersecurity incidents can compromise such information.[4]

37. Defendant also knew that healthcare, pharmaceutical, identity, and medication data are highly valuable to criminals and can be used for identity theft, medical identity theft, prescription fraud, insurance fraud, targeted phishing, impersonation, and extortion.

38. The likelihood of social-engineering and cloud-application attacks against large healthcare enterprises was well known before August 2026. Reasonable security therefore required controls designed not merely to prevent malware, but also to prevent stolen or socially engineered

[4] McKesson Corp., Annual Report (Form 10-K), at 17–18, 26–27 (May 8, 2026), https://www.sec.gov/Archives/edgar/data/927653/000092765326000069/mck-20260331.htm.

credentials from providing broad access to readable patient data.

39. Given Defendant's size, risk profile, and possession of large volumes of PHI, reasonable security measures appropriate to their environment included, among other things: phishing-resistant multifactor authentication; rigorous help-desk and account-recovery verification; least-privilege and role-based access; session and token controls; segmentation of sensitive patient data; monitoring for anomalous logins; data-loss-prevention controls; alerts for bulk queries and exports; encryption or tokenization; secure configuration of third-party SaaS and cloud applications; vendor governance; and tested incident-response procedures.

40. Upon information and belief, Defendant failed to implement, enforce, or properly configure one or more of those safeguards. The alleged ability of a threat actor to obtain broad access through social engineering and remove approximately one terabyte of information over multiple days without effective prevention or interruption supports that inference.

41. Upon information and belief, Defendant failed to adequately verify identity before granting or resetting access, failed to constrain compromised credentials or sessions, failed to limit the accessible scope of patient data, failed to detect anomalous bulk access or exports promptly, and failed to prevent exfiltrated patient data from being readable and useful to the attacker.

42. Texas law requires businesses to implement and maintain reasonable procedures to protect sensitive personal information collected or maintained in the regular course of business from unlawful use or disclosure. Tex. Bus. & Com. Code § 521.052(a). Plaintiff invokes that statute as evidence of public policy and the standard of reasonable care, not as a standalone implied private cause of action.[5]

43. The HIPAA Security Rule likewise requires covered entities and business associates to maintain administrative, physical, and technical safeguards appropriate to protect

---

[5] Tex. Bus. & Com. Code Ann. § 521.052(a) (West 2026).

electronic PHI. Plaintiff does not assert a private cause of action under HIPAA; he invokes those standards as evidence of Defendant's recognized duties and undertakings.[6]

44. Defendant's own privacy, business-associate, and security representations confirm that it understood and assumed obligations to protect patient information using defined administrative, physical, technical, access-control, confidentiality, minimum-necessary, incident-reporting, and mitigation measures.

**D. Plaintiff's and Class Members' Injuries**

45. Upon information and belief, the unauthorized acquisition and disclosure of Plaintiff's Private Information to a criminal extortion group caused an actual invasion of Plaintiff's privacy and loss of the confidentiality and control that attached to his medical and prescription information.

46. Plaintiff disclosed or permitted the disclosure of his information solely for limited healthcare, pharmacy-benefit, medication-access, and prescription purposes. He did not consent to disclosure to criminals or to use of the information for extortion, fraud, sale, or other unauthorized purposes.

47. Prescription and clinical information is inherently private. Its unauthorized disclosure reveals facts about a person's medical care and can enable highly convincing social-engineering and medical-identity schemes.

48. Many compromised data elements, including dates of birth, government or benefit identifiers, medical histories, medication histories, and provider relationships, cannot be readily changed. The resulting risk persists even if a password or payment card is replaced.

49. Plaintiff has spent time and effort investigating the Data Breach, reviewing records, identifying Defendant's role in his prescription transactions, and determining what protective steps

---

[6] 45 C.F.R. §§ 164.306(a), 164.308(a), 164.312 (2025).

may be necessary. That time was reasonably incurred because Defendant has not yet supplied a complete individualized account of the data taken.

50. Plaintiff reasonably expects to spend additional time monitoring communications, prescription and insurance records, medical records, financial accounts, credit files, and benefit activity for signs of misuse and responding to any suspicious activity.

51. The targeted nature of the intrusion, the alleged possession of the data by an extortion group, the alleged volume of exfiltration, and the sensitivity and persistence of the reported fields make the risk of misuse concrete and substantial rather than speculative.

52. Plaintiff and Class members also failed to receive the data-security and confidentiality performance Defendant undertook and represented when Defendant accepted and processed their Private Information.

53. Defendant continues to possess substantial quantities of patient information and have not publicly established that all deficiencies permitting the Data Breach have been fully remediated. Appropriate prospective relief is therefore necessary to the extent supported by the facts developed in this action.

## CLASS ACTION ALLEGATIONS

54. Plaintiff brings this action under Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of the following proposed Nationwide Class:

> All natural persons in the United States whose Private Information was accessed, acquired, exfiltrated, or otherwise compromised in the cybersecurity incident McKesson discovered on or about August 25, 2026.

55. Excluded from the proposed class is Defendant; its parents, subsidiaries, affiliates, officers, and directors; the judicial officers assigned to this case and their immediate family members and staff; and any person the Court determines should be excluded.

56. Plaintiff reserves the right to amend the class definitions as Defendant’s identify

the affected applications, data elements, business lines, and persons.

57. Numerosity is satisfied because the proposed classes contain far more than 100 members and joinder is impracticable. Public reporting describes approximately 284 million raw patient-related records, although the number of unique affected individuals remains under investigation.

58. Class membership is ascertainable from Defendant's affected-data inventories, access and export logs, patient and transaction identifiers, data maps, notification lists, and customer or provider records.

59. Common questions of law and fact include: (a) what applications and data were accessed and exfiltrated; (b) whether Defendant owed duties to safeguard Class members' Private Information; (c) whether Defendant's security practices were reasonable; (d) whether Defendant complied with its privacy and security undertakings; (e) whether Defendant timely detected, contained, investigated, and disclosed the Data Breach; (f) whether Defendant's conduct caused Class members' injuries; and (g) what damages and equitable relief are appropriate.

60. Plaintiff's claims are typical because, upon information and belief, his Private Information was processed through the same integrated prescription-technology, medication-access, and pharmacy-management ecosystem, was exposed through the same course of security conduct, and caused the same categories of privacy, confidentiality, monitoring, and benefit-of-the-bargain injuries as those suffered by other Class members.

61. Plaintiff will fairly and adequately protect the interests of the proposed classes. Plaintiff understands the obligations of a class representative, has no interests antagonistic to the classes, and has retained counsel experienced in complex, privacy, cybersecurity, and class-action litigation.

62. Common questions predominate because liability turns principally on Defendant's uniform systems, access controls, security governance, data-retention practices, incident response,

representations, and conduct concerning the same Data Breach.

63. A class action is superior to individual actions because the claims arise from a common course of conduct; individual proceedings would duplicate discovery, create a risk of inconsistent rulings, and be economically impracticable for many Class members.

64. Certification under Rule 23(b)(2) is appropriate to the extent Defendant has acted or refused to act on grounds generally applicable to the classes and uniform declaratory or injunctive relief is warranted. Certification under Rule 23(b)(3) is appropriate for damages and other monetary relief.

**COUNT I - NEGLIGENCE**

(*On Behalf of Plaintiff and the Nationwide Class*)

65. Plaintiff incorporates all preceding allegations as though fully set forth herein.

66. Defendant affirmatively collected, received, created, processed, stored, maintained, transmitted, and controlled Plaintiff's and Class members' highly sensitive Private Information.

67. Defendant owed Plaintiff and Class members duties under Texas law and, in the alternative, other applicable state law to exercise reasonable care in collecting, using, retaining, securing, and disclosing that information.

68. Those duties arose from Defendant’s affirmative undertaking to process patient information for medication-access, prior-authorization, and pharmacy-management services; their exclusive control over the relevant systems and security measures; the foreseeability of cyberattacks against healthcare data; the sensitivity and persistence of the information; and Defendant's superior knowledge of the risks and safeguards.

69. Defendant also assumed duties by representing and undertaking that it would use appropriate physical, electronic, administrative, and technical safeguards; restrict access to persons with a need to know; protect the confidentiality, integrity, and availability of electronic PHI; apply

minimum-necessary principles; and report and mitigate unauthorized disclosures and security incidents.

70. The statutory and regulatory standards described above, including Tex. Bus. & Com. Code § 521.052(a) and the HIPAA Security Rule, further inform the reasonable standard of care. Plaintiff does not assert a standalone private cause of action under those provisions.

71. Defendant breached its duties by, among other things, failing to: (a) use phishing-resistant authentication and rigorous identity verification; (b) limit access according to least privilege; (c) segment and minimize patient data; (d) monitor and block anomalous bulk access and export; (e) securely configure and supervise third-party applications; (f) protect data from remaining readable after credential or session compromise; (g) adequately train and supervise personnel; (h) timely detect and contain the intrusion; and (i) implement the safeguards Defendant represented they would use.

72. The alleged social-engineering compromise and multi-day exfiltration of approximately one terabyte of data support the inference that one or more of those security failures occurred. The precise failures will be further established through discovery.

73. Defendant's breaches were actual and proximate causes of unauthorized access to and exfiltration of Plaintiff's and Class members' Private Information. The criminal attack does not sever causation because the foreseeable risk of criminal acquisition of inadequately protected healthcare data is the very risk that made Defendant's conduct negligent.

74. As a direct and proximate result, Plaintiff and Class members suffered actual loss of privacy and confidentiality, unauthorized disclosure and loss of control of Private Information, reasonably incurred investigation and mitigation time, expenses where incurred, continuing risk of identity and medical-identity misuse, and other legally cognizable damages.

75. Plaintiff and Class members are entitled to compensatory and nominal damages, pre- and post-judgment interest, costs, and other relief available under applicable law.

**COUNT II - BREACH OF IMPLIED CONTRACT**
(*On Behalf of Plaintiff and the Nationwide Class*)

76. Plaintiff incorporates all preceding allegations as though fully set forth herein.

77. In order for Defendant to perform its services concerning Plaintiff and Class members, patients necessarily provided or permitted providers, pharmacies, pharmacy benefit managers, and payers to provide Defendant with Private Information.

78. Defendant knowingly accepted, processed, retained, and economically benefited from that information and the associated prescription and pharmacy transactions. The parties' conduct created an implied-in-fact agreement governing Defendant's use and protection of the information.

79. The implied agreement included definite and objectively ascertainable terms that Defendant would: (a) use patient information only for authorized healthcare, medication-access, and pharmacy-management purposes; (b) limit collection and use to information reasonably necessary for those purposes; (c) restrict access to personnel and contractors who needed the information and were bound by confidentiality obligations; (d) implement administrative, physical, electronic, and technical safeguards reasonably appropriate to the sensitivity of the data; (e) maintain the confidentiality, integrity, and availability of electronic PHI; (f) securely configure and monitor systems and subcontractors receiving PHI; and (g) timely respond to and report unauthorized access or disclosure.

80. Those implied terms are evidenced by the nature of the limited healthcare and pharmacy transactions, Defendant's course of performance, and Defendant’s public cybersecurity representations.

81. Plaintiff and Class members performed by providing or permitting the transmission of accurate information and allowing Defendant to use it for the purposes of carrying out its business operations.

82. Defendant breached the implied agreement by failing to provide the specified security and confidentiality performance and by permitting unauthorized criminal access to and exfiltration of the information.

83. Defendant's Data Breach caused Plaintiff and Class members to lose the confidentiality and control promised as part of the transaction and deprived them of the data-security performance for which their information and participation were exchanged.

84. Plaintiff and Class members are entitled to actual, nominal, consequential, and other contract damages available under applicable law.

**COUNT III - UNJUST ENRICHMENT**

(*On Behalf of Plaintiff and the Nationwide Class*)

85. Plaintiff incorporates all preceding allegations as though fully set forth herein.

86. This Count is pled in the alternative to Count II to the extent no enforceable contract governs Defendant's obligations to Plaintiff and the Nationwide Class.

87. Defendant received economic benefits from processing Plaintiff's and Class members' prescription, medication-access, and pharmacy-management transactions, including fees, revenue, commercial relationships, operational data, and other value generated by their integration with providers, pharmacies, payers, pharmacy benefit managers, health systems, and pharmaceutical manufacturers.

88. Plaintiff and Class members conferred those benefits by permitting their Private Information to be processed for limited healthcare, prescription, and pharmacy purposes under circumstances in which reasonable data security and confidentiality were expected.

89. Upon information and belief, Defendant also retained cost savings by failing to fund, implement, enforce, or maintain the full measure of security controls reasonably required for the sensitivity and volume of the data.

90. It would be inequitable for Defendant to retain the portion of transaction-derived benefits and cost savings attributable to security and confidentiality performance they failed to provide.

91. Plaintiff does not seek disgorgement of compensation for healthcare or prescription services actually provided. He seeks restitution limited to benefits attributable to the data-security and confidentiality performance not provided and the security costs wrongfully avoided, in an amount to be determined through discovery.

92. Plaintiff and the Class are entitled to restitution, disgorgement where available, constructive trust or equitable accounting as appropriate, and other equitable relief permitted by law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff William Hall, individually and on behalf of the proposed Classes, respectfully requests that the Court enter judgment in his favor and against Defendant and:

A. Certify the proposed Class under Federal Rule of Civil Procedure 23 and appoint Plaintiff as class representative and his counsel as Class Counsel;

B. Declare that Defendant's conduct violated the duties and obligations alleged in this Complaint;

C. Award Plaintiff and Class members compensatory, nominal, consequential, restitutionary, and other damages or monetary relief available under applicable law;

D. Award appropriate declaratory and injunctive relief, to the extent supported by the facts and Article III, requiring Defendant to remediate proven security deficiencies, improve identity and access controls, conduct appropriate independent security assessment, minimize and protect retained patient data, improve monitoring and data-loss prevention, and provide meaningful identity and medical-identity protection services;

E. Award restitution, disgorgement, equitable accounting, or other equitable relief where available;

F. Award pre-judgment and post-judgment interest;

G. Award reasonable attorneys' fees and litigation costs where authorized by law; and

H. Grant such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: August 31, 2026

Respectfully submitted,

By: *<u>/s/Leanna A. Loginov</u>*
Leanna A. Loginov
**SHAMIS & GENTILE, P.A.**
2626 Cole Avenue, Suite 300
Dallas, Texas 75204
Tel: (305) 479-2299
lloginov@shamisgentile.com

Blake Hunter Yagman (*pro hac vice* forthcoming)
**YAGMAN PLLC**
1050 30th St. N.W.
Washington, D.C. 20007
Telephone: (929) 709-1493
Email: blake.yagman@yagmanpllc.com

Attorneys for Plaintiff and the Proposed Classes